**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KOREA TRADE INSURANCE CORPORATION, a South Korea corporation, Plaintiff, v. AMEDA, INC., a Delaware corporation, Defendant. | Case No.: |

## COMPLAINT

Plaintiff, Korea Trade Insurance Corporation ("KSure"), by and through its undersigned counsel, hereby brings this action against Defendant, Ameda, Inc. ("Ameda"), and alleges as follows:

### NATURE OF THE ACTION

1. KSure seeks money damages against Ameda for breach of contract, unjust enrichment, and fraud arising out of Ameda's failure to fulfill payment obligations in the amount of $191,034.98 for the purchase of goods from Cimilre Co. Ltd. ("Cimilre"), a South Korean manufacturer and exporter of breast pumps and related accessories, and pursuant to an assignment of rights from Cimilre to KSure.

### THE PARTIES

2. KSure is a corporation formed under the laws of South Korea, with its principal place of business in South Korea. KSure is the official export credit agency under the South Korean Ministry of Trade, Industry and Energy.

3. Ameda, Inc. is a corporation incorporated in Delaware and registered to do business in Illinois, with its principal place of business at 485 E Half Day Road, Buffalo Grove, Illinois 60089. Ameda sells breast pumps and other breastfeeding products in the United States and abroad.

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because this action is between a citizen of a State and a citizen or subject of a foreign state, and the value of the matter in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

5. This Court has personal jurisdiction over Ameda because Ameda has its principal place of business in this district.

6. Under 28 U.S.C. § 1391(b), venue is proper in this district because Ameda is a resident of the State in which this district is located.

## FACTUAL ALLEGATIONS

7. Between October 2020 and February 2021, Ameda issued five purchase orders to Cimilre, for breast pumps and related accessories (the "Purchase Orders"), as follows:

| PO No. | Date | Total Amount (USD) |
|---|---|---|
| 617280 | Oct. 13, 2020 | $133,902.74 |
| 617513 | Jan. 14, 2021 | $6,780.00 |
| 617459 | Dec. 13, 2020 | $166,356.08 |
| 617595 | Feb. 22, 2021 | $16,950.00 |
| 617567 | Feb. 8, 2021 | $58,304.94 |

True and correct copies of the Purchase Orders are attached as **Composite Exhibit A**.

8. Cimilre issued invoices to Ameda corresponding to each of the Purchase Orders (the "Invoices"), as follows:

| Invoice No. | Date | Total Amount (USD) | Amount Outstanding (USD) |
|---|---|---|---|
| CMP20OCT14US | Nov. 25, 2020 | $133,902.74 | $67,155.73 |
| CMP21JAN15US | Feb. 14, 2021 | $6,780.00 | $3,990.00 |
| CMP20DEC14US | Feb. 22, 2021 | $166,356.08 | $83,178.04 |
| CMP21FEB23US | Apr. 28, 2021 | $8,475.00 | $4,237.50 |
| CMP21FEB09US | Apr. 28, 2021 | $66,413.04 | $33,023.07 |
| **OUTSTANDING TOTAL** | | | $191,584.34 |

True and correct copies of the Invoices are attached as **Composite Exhibit B**.

9. Under the agreed upon terms of each agreement formed by each Purchase Order and corresponding Invoice ("Agreements"), Ameda was to pay 50% of each order total in advance, and the remaining 50% upon acceptance of the goods ordered.

10. Pursuant to the Agreements, the delivery terms for the Products were "FOB Busan, Korea per Incoterms 2015."

11. Cimilre fully performed under the terms of the Agreements when it delivered to Ameda the purchased products listed on each of the Purchase Orders (the "Products") FOB Busan.

12. Ameda received, accepted, and retained the Products.

13. At no point did Ameda complain as to the quality of the Products, or that the Cimilre had not fully complied with the terms of the Invoices.

14. Ameda advanced 50% of each Invoice's total amount to Cimilre, consistent with the Agreements.

15. Ameda breached the Agreements when it refused to pay the remaining 50% of each of the Invoices upon accepting the Products, leaving a principal balance owed of $191,584.34 ("Outstanding Debt").

16. When Cimilre made demand for payment of the remaining 50% of the Invoices, Ameda refused to pay, claiming that it had a right to setoff arising from legal fees allegedly incurred in South Korea, in a matter unrelated to Products and the Agreements.

17. Upon information and belief, to the extent Ameda did in fact incur the claimed legal fees, such legal fees were incurred between January and October 2020—before it submitted the Purchase Orders to Cimilre.

18. Ameda issued the Purchased Orders with the intent to accept the Products and not fully pay the corresponding Invoices.

19. At all relevant times, Cimilre maintained an export insurance credit policy with KSure.

20. Upon Ameda's failure to make full payment on the Invoices, KSure indemnified Cimilre consistent with its insurance policy and Cimilre assigned its rights to receive payment on the Invoices to KSure.

21. KSure made further demands for payment on Ameda in April and October 2022, but Ameda again refused payment.

## COUNT I
## BREACH OF CONTRACT

22. KSure repeats and realleges each allegation in paragraphs 1 through 21 as if fully set forth herein.

23. Cimilre and Ameda entered into valid contracts for the purchase of the Products, as reflected in the Agreements.

24. Cimilre substantially complied with its obligations, as it timely shipped and delivered the Products purchased by Ameda, consistent with the terms of the Agreements.

25. Ameda breached its obligations when it failed to pay the Outstanding Debt.

26. KSure, as Cimilre's assignee, suffered damages resulting from Ameda's breach, and is entitled to payment of the Outstanding Debt from Ameda.

WHEREFORE, KSure demands judgment against Ameda for the Outstanding Debt owed pursuant to the Invoices, plus accrued and accruing pre- and post-judgment interest, costs, attorney's fees, and for all such other relief as the Court deems just and proper.

### COUNT II
### UNJUST ENRICHMENT

27. KSure repeats and realleges each allegation in paragraphs 1 through 21 as if fully set forth herein.

28. This is an action in the alternative to the relief requested in Count I.

29. Cimilre conferred a benefit on Ameda when it delivered the Products Ameda purchased, as reflected in the Purchase Orders and Invoices.

30. Ameda accepted and retained the benefit conferred by Cimilre.

31. Although Ameda made partial payments toward the Invoices, an Outstanding Debt of $191,584.34 remains.

32. It would be inequitable for Ameda to retain the benefit of the Products without repaying the Outstanding Debt to Ksure, as Cimilre's assignee and as KSure indemnified Cimilre for Cimilre's loss arising from Ameda's failure to make payment.

WHEREFORE, KSure demands judgment against Ameda for the Outstanding Debt owed in connection with the Products it received and retained, plus accrued and accruing pre- and post-judgment interest, costs, attorney's fees, and for all such other relief as the Court deems just and proper.

## COUNT III
## FRAUD

33. KSure repeats and realleges each allegation in paragraphs 1 through 32 as if fully set forth herein.

34. This is an action in the alternative to the relief requested in Count I.

35. Between October 2020 and February 2021, at the direction and under the supervision of Greg Carlson, Ameda issued the Purchase Orders.

36. At the time Ameda placed its orders for the Products reflected in the Purchase Orders, it believed that it had a right to setoff of approximately $156,000 arising from legal fees that it allegedly incurred in South Korea, in a matter unrelated to the Products or the Agreements.

37. Ameda issued the Purchase Orders with the intent to accept the Products from Cimilre to satisfy its perceived setoff right, and without the intent to make full payment on the corresponding Invoices.

38. On the date of each Purchase Order, Ameda made a material misrepresentation by ordering Products for which it did not intend to pay.

39. Ameda issued the Purchase Orders to induce Cimilre's reliance thereon and cause Cimilre to ship and deliver the Products to Ameda.

40. Cimilre's expectation, and as contained in the Agreements, was that Ameda would make full payment for the Invoices.

41. Cimilre justifiably relied on Ameda's misrepresentations and caused the Products to be shipped and delivered to Ameda.

42. KSure, as Cimilre's assignee, suffered damages in the amount of the Outstanding Debt as a result of Ameda's material misrepresentations.

WHEREFORE, KSure demands judgment against Ameda for the Outstanding Debt owed in connection with the Products it received and retained, plus accrued and accruing pre- and post-judgment interest, costs, attorney's fees, and for all such other relief as the Court deems just and proper.

DATED: October 17, 2023                                Respectfully submitted,

By: /s/ Neal H. Levin
Neal H. Levin (Atty. No. 6203156)
RIMÔN PC
980 N. Michigan Ave #1400
Chicago, IL 60611
Tel: (312) 224-0966
Neal.Levin@rimonlaw.com


By: /s/ M. Zachary Bluestone
M. Zachary Bluestone
(*pro hac vice to be submitted*)
BLUESTONE, P.C.
1717 K Street, Suite 900
Washington, D.C.
Tel: (202) 655-2250
mzb@bluestonelaw.com

*Attorneys for Plaintiff Korea Trade Insurance Corporation*