IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KOREA TRADE INSURANCE CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) ) | No. 23 C 15070 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| AMEDA, Inc., | ) ) | |
| Defendant. | ) | |

**ORDER**

For the reasons described below, the defendant's motion to dismiss [10] is granted, the motion to compel arbitration [11] is denied, and the motion compel joinder of a required party [12] is denied. Plaintiff is granted leave to file an amended complaint that complies with this order by 9/11/25.

**STATEMENT**

1. **Background**

In May 2018, Ameda, Inc. and Cimilre Co. Ltd. entered an option contract for the bulk manufacture and sale of breast pumps (the "Supply Agreement" or "Agreement"). *See* Private Label Product Supply Agreement 18 ¶ 23, ECF No. 10-1.[1] The manufacturer, Cimilre, pledged to produce and supply customized pumps "exclusively to Ameda" for a renewable five-year term. *Id.*

---

[1] For reasons that will become obvious, the plaintiff does not attach or quote from the 2018 Supply Agreement in its complaint. As explained below, however, the centrality of that agreement necessitates its consideration in conjunction with the pleadings. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("It is [] well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." (quotation marks omitted)). While the plaintiff assiduously avoids explicit reference to that document, courts are not beholden to such attempts to "surviv[e] a motion to dismiss by artful pleading." *Id.* Because the Supply Agreement underlies and informs every aspect of the contractual relationship between Cimilre and Ameda, including the submission and fulfillment of purchase orders, the Court finds that the complaint adequately "refer[s] to" the Agreement through its repeated allegations of unpaid orders.

at §§ 1(c), 2. The buyer, Ameda, agreed to place purchase orders at regular intervals, describing the specific type, quantity, and specifications required. *Id.* at § 7.

Three years into the arrangement, a dispute arose. According to the complaint, Ameda placed five purchase orders between October 2020 and February 2021, accepted the products, but refused to complete payment. Compl. ¶¶ 7-15. Ameda allegedly claimed that it had a right to withhold payment in order to offset legal fees incurred in an unrelated dispute with Cimilre. *Id.* at ¶ 16.

To recoup its losses, Cimilre obtained indemnification from its insurer, Korea Trade Insurance Corporation ("Ksure"). In exchange, Cimilre assigned its right to collect on the outstanding invoices to Ksure. *Id.* at ¶¶ 2, 19-20. The insurer then filed this lawsuit against Ameda, alleging breach of contract, unjust enrichment, and fraud as theories supporting its claim for relief.

At issue are Ameda's motions to dismiss, compel arbitration, and join a required party. *See* Def.'s Mot. to Dismiss ("Dismissal Mot."), ECF No. 10; Def.'s Mot. to Compel Arbitration ("Arbitration Mot."), ECF No. 11; Def.'s Mot. to Join a Required Party ("Joinder Mot."), ECF No. 12. Seeking dismissal, Ameda contends that the Supply Agreement prohibits assignments of rights, precluding Ksure from filing this lawsuit in Cimilre's stead. Alternatively, Ameda seeks to enforce a provision that, in its view, requires arbitration of Ksure's claim. If the Court declines to dismiss or order arbitration, Ameda moves to join Cimilre as a required party under Rule 19.

**2. Discussion**

    **a. Motion to Dismiss**

Dismissal under Rule 12(b) is appropriate "when the factual allegations in the complaint, accepted as true, do not state a facially plausible claim for relief." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also* Fed. R. Civ. P. 12(b). When deciding a motion to dismiss, the Court accepts all well-pleaded facts as true and draws all possible inferences in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

        **i. Breach of contract**

Ameda contends that Ksure has failed to state a facially plausible claim for breach of contract because it has no legal right to assert that theory on Cimilre's behalf. Dismissal Mot. 2. The Court agrees.

Section 23 of the Supply Agreement contains a sweeping non-assignment clause. It states: "Neither Party will assign any of its rights under this Agreement, either voluntarily or involuntarily, whether by merger, consolidation, dissolution, operation of law, or in any other manner, except with the prior written consent (which will not be unreasonably withheld) of the

other Party." *See* Agreement § 23. Ksure's breach of contract theory invokes a "right[] under th[e] Agreement"—the supplier's right to collect on fulfilled purchase orders. The complaint does not allege that Ameda either provided or unreasonably withheld consent to assign. Nor does it challenge the contractual validity or enforceability of the Supply Agreement writ large. It follows, therefore, that § 23 prohibits Cimilre from assigning its right to collect on unpaid purchase orders, depriving Ksure of a contractual basis to sue.

Ksure argues that the non-assignment clause of the Supply Agreement does not apply because its lawsuit arises strictly from individual purchase orders. That argument teeters on a false premise—the notion that purchase orders constitute independent contracts not subject to the terms of the Supply Agreement. In reality, the Agreement operates as an overarching master contract dictating all aspects of the parties' contractual relationship, including the terms by which individual orders may be submitted.

The plain text of the Supply Agreement dispels any notion that purchase orders lie beyond its purview. Indeed, it expressly incorporates those orders while subordinating their terms to its own:

> This Agreement will be supplemented by each accepted Purchase Order, but in the event any Purchase Order terms and conditions conflict with any of the terms of this Agreement, the terms of this Agreement . . . will control and prevail. Additional or non-conforming terms added . . . to a Purchase Order . . . will not become part of this Agreement unless both Parties expressly agree in writing."

Agreement § 7(a).

Moreover, the Supply Agreement provides the blueprint for how purchase orders may be placed and fulfilled. Section 7(a) states that Ameda must include specific information in each order regarding lot numbers, prices, and delivery destinations. Section 7(b) requires Cimilre to confirm receipt within three days and fulfill any accepted orders within 30 days of initial payment. The plain import of those provisions is to govern the exchange of purchase orders; if the Supply Agreement did not apply to those orders, they would be rendered superfluous in clear contravention of the parties' intent.

That's not all. Under the plaintiff's reading, a whole host of collateral provisions governing insurance, standards, and compliance would be equally meaningless. One such provision, § 17, requires Ameda to maintain comprehensive business and product-liability coverage. *Id.* § 17(a). Another prescribes an extensive regime of quality-control measures and inspection duties. *See id.* § 5. Yet another empowers Ameda to reject any products that do not conform with particular specifications or regulatory requirements. *Id.* §§ 4, 7(c). Ksure offers no basis to distinguish between those provisions—which clearly dictate the terms by which purchase orders may be submitted—and the non-assignment clause. In fact, the plaintiff writes off the entire contract as

3

"barely relevant" to this dispute. Resp. 7. That cannot be. If each purchase order constituted an independent contract not governed by the terms of the Supply Agreement, dozens of provisions that purport to do precisely that would be toothless, voidable through the simple mechanism of placing a new order.

The conclusion that the purchase orders operate under the umbrella of the master Supply Agreement aligns squarely with applicable law. Illinois, the forum state that supplies this Court's choice-of-law rules, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), generally defers to the law selected by contracting parties to govern their dispute. *See Medline Indus. Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 862 (N.D. Ill. 2002). Here, the Supply Agreement dictates that "[a]ll issues and questions concerning the construction [and] interpretation . . . of this Agreement and the transactions contemplated hereby will be governed by, and construed in accordance with, the laws of the State of New York." Agreement § 27. Because this dispute implicates both the proper interpretation of the Agreement and the transactions it contemplates, New York law controls.[2]

Courts applying New York law have consistently ruled that discrete purchase orders made between parties to a master agreement are governed by the terms of that agreement. In *National Titanium Dioxide Co. v. Velco Enterprises, Ltd.*, for instance, the Southern District of New York ruled that an arbitration clause of an overarching distributorship contract applied to a claim to recover on a series of unpaid sales orders. 879 F. Supp. 372 (S.D.N.Y. 1995). The court rejected the argument that those orders constituted "separate contracts . . . unrelated to either the [master] Agreement or any arbitration [clause] contained in the Agreement" under New York law. *Id.* at 376. Instead, the Court found that "[t]he purchase orders [were] inextricably tied to the Agreement" because they "stem[med] directly from the parties' relationship under the Agreement and consist[ed] of the same subject matter." *Id.* at 375-76. A New York state court adopted the same reasoning in *Liptis Pharmaceuticals USA, Inc. v. Liptis for Pharmaceuticals & Medical Products*, 215 N.Y.S.3d 121 (N.Y. Sup. Ct. 2nd. Dept. 2024). There, the court found that individual purchase orders were "each . . . governed by the terms of the master agreement and did not constitute independent agreements capable of supporting a breach of contract cause of action" on their own.

---

[2] The Court previously solicited supplemental briefing on Illinois's "most significant contacts" test, observing that Illinois courts will not defer to a choice-of-law provision of disputed validity. Order & Statement 1, ECF No. 21 (citing *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343 (7th Cir. 2015)). Upon review, however, the Court agrees with the defendant that this case does not implicate an "issue as to the validity of the very formation" of the Supply Agreement or other reason to believe that "the contract's legality is fairly in doubt." *Id.* at 357. The question before the Court is one of scope, not validity—whether the terms of the concededly legitimate Agreement extend to individual purchase orders. That interpretive question triggers the Agreement's choice-of-law provision, which, as part of a binding and enforceable accord, merits full deference. *See Medline*, 230 F. Supp. 2d at 862.

4

*Id.* at 123; *see also id.* (finding that the master agreement "unambiguously provide[d] that purchase orders are to be governed by the master agreement's terms and not by the purchase orders' own terms as stand-alone contracts for the sale of goods"). Extending that logic to this case permits only one conclusion: All purchase orders submitted by Ameda to Cimilre fall squarely within the scope of the 2018 Supply Agreement.

The Supply Agreement expressly directs the submission of individual purchase orders, defines the broader contractual arrangement within which they are situated, and expressly incorporates their terms. Accordingly, the Agreement governs the extent of the parties' mutual obligations with respect to the purchase orders at issue in this case. Because § 23 prohibits assignment of any "rights under th[e] Agreement"—including Cimilre's contractual right to collect on unpaid orders—Ksure lacks legal authority to assert breach of contract as a third-party assignee. *GMAC Com. Credit, LLC v. Dillard Dep't Stores, Inc.*, 198 F.R.D. 402, 407 (S.D.N.Y. 2001) ("Under New York law, an assignee cannot sue to enforce its rights under the contract without also assuming the other terms of the contract"). For that reason, Ksure has failed to state a minimally plausible claim under a breach of contract theory.

### ii. Unjust Enrichment

The plaintiff's unjust enrichment theory also fails, though on different grounds.

To succeed on a theory of unjust enrichment, "a plaintiff must establish: '(1) the defendant has unjustly retained a benefit to the plaintiff's detriment, and (2) the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 634-35 (N.D. Ill. 2016) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)).[3] Because unjust enrichment does not depend upon the existence or violation of a contractual duty—indeed it is typically raised as an alternative to breach of contract, *see, e.g.*, *Siegal v. GEICO Cas. Co.*, 523 F. Supp. 3d 1032, 1045 (N.D. Ill. 2021)—the non-assignment provision does not categorically bar Ksure from asserting the theory. Similarly, the existence of an express contract does not doom Ksure's unjust-enrichment theory, as it might if Ksure had been a contracting party. *See RehabCare Grp. E., Inc. v. SAK Mgmt. Servs.*,

---

[3] Because the plaintiff's unjust enrichment and fraud theories do not turn on any language in the Supply Agreement, the contract's choice-of-law provision does not apply. *See Kuehn v. Childrens Hosp., Los Angeles*, 119 F.3d 1296, 1302 (7th Cir. 1997) ("[C]ontractual choice of law provisions . . . will not be construed to govern tort as well as contract disputes unless it is clear that this is what the parties intended."). As such, the elements of those torts are governed by the law of Illinois, given that neither party has asserted a relevant conflict with a foreign jurisdiction's law. *See Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021) ("Under Illinois choice-of-law rules, forum law is applied unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply." (quotation marks omitted)).

*LLC*, No. 09-cv-004523, 2010 WL 3307084, at *3 n.3 (N.D.Ill. Aug. 18, 2010) ("Illinois courts generally will bar an unjust enrichment claim where there is an expressed agreement between the parties; however, this prohibition does not extend to unjust enrichment claims against a third party that was not party to the agreement."). Nor is it fatal that Ksure did not personally provide the unjustly retained benefit; Illinois law imposes no such requirement. *See Wiegel v. Stork Craft Mfg., Inc.*, 780 F. Supp. 2d 691, 695 (N.D. Ill. 2011) ("[I]n Illinois, courts emphasize the defendant's retention of the benefit, rather than plaintiff's conferral" and "do[] not specifically require that plaintiffs directly confer a benefit on [the] defendant." (quotation marks omitted)). It is enough that Ksure suffered a detriment—the cost of indemnifying Cimilre pursuant to their insurance agreement—as a direct result of Ameda's decision to retain breast pumps.

Ksure's theory of unjust enrichment falters on another basis, however. To state a claim, Ksure must allege that the Ameda's "retention of [a] benefit violate[d] the fundamental principles of justice, equity, and good conscience." *MetroPCS*, 215 F. Supp. 3d at 635. The complaint identifies only a single reason for why Ameda's decision to keep the disputed breast-pump shipments meets that standard: The fact that Ameda did not pay the amount dictated by the purchase orders. As discussed, however, all purchase orders are subject to the non-assignment clause of the Supply Agreement and Ksure may not seek to enforce the orders as a third-party assignee. Ksure thus fails to state a claim for unjust enrichment; the sole improper conduct alleged in support of that theory is a violation of a contract Ksure has no right to invoke. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.").

### iii. Fraud

Ksure's common law fraud theory fares no better.

"Under Illinois law, a claim for fraud or fraudulent misrepresentation requires: '(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiffs reliance upon the truth of the statement; and (5) plaintiffs damages resulting from reliance on the statement.'" *MetroPCS*, 215 F. Supp. 3d at 635 (quoting *Tricontinental Indus. v. PricewaterhouseCoopers, L.L.P.*, 475 F.3d 824, 841 (7th Cir. 2007)). Ksure has pleaded itself out of court on those elements. Setting aside the fact that Ameda's alleged false statements pertain exclusively to purchase orders that Ksure may not invoke, the complaint fails to allege that Ameda intended to "induce the *plaintiff* to act." *Id.* (emphasis added). Ameda directed its false statements toward Cimilre alone; at no point did the defendant seek to sway the conduct of Ksure, the insurer, in any direction. Nor does the complaint suggest that Ksure placed "reliance upon the truth of [Ameda's] statement[s]." *Id.* As an insurer, the company's only pertinent action in connection to this dispute was the decision to

indemnify Ameda—a decision made long before, and in no way in reliance upon, Ameda's alleged false statements.

In light of the Supply Agreement's non-assignment clause, Ksure lacks a basis to assert violations of the Ameda's purchase orders with Cimilre. That dooms the plaintiff's claim for breach of contract. Because that breach is also the sole wrongful conduct underlying the plaintiff's unjust enrichment theory, it too must be dismissed. The plaintiff fraud theory fails as well, since the complaint alleges no intent to induce action by Ksure or reliance by Ksure on false statements. Accordingly, Ksure has failed to state a claim for relief under any viable theory. The complaint is dismissed without prejudice, and the plaintiff is granted leave to narrowly amend solely its unjust enrichment theory to allege any non-contractual basis that it might have to allege that the retention of the disputed shipments "violate[d] the fundamental principles of justice, equity, and good conscience" *without reference to the purchase orders*. *MetroPCS*, 215 F. Supp. 3d at 635.

### b. Motion to Compel Arbitration

Ameda contends that more sweeping relief is warranted—an order dismissing all claims with prejudice and compelling arbitration. That argument is based on § 26 of the Supply Agreement, which mandates arbitration of "any dispute arising out of or in connection with this Agreement." Because all causes of action, including unjust enrichment and fraud, at the very least "aris[e] . . . in connection with" the Supply Agreement, Ameda maintains that arbitration is required. Arbitration Mot. 3-4.

On this issue, the defendant is a victim of its own success. Having convinced the Court that the non-assignment clause prevents Ksure from invoking the Supply Agreement or purchase orders, Ameda fails to address a critical implication of that position: Ksure cannot be bound by an arbitration provision it neither signed nor received through assignment. "It goes without saying that a contract cannot bind a nonparty." *Equal Emp. Opportunity Comm'n. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Ameda, it follows, has no basis to enforce the arbitration provision against Ksure. Its motion to compel arbitration is denied.

### c. Motion to Join a Required Party

Ameda also moves to compel the joinder of Cimilre as a required co-plaintiff. Rule 19 directs courts to join a "required party" if certain conditions are met. First, the party must be subject to service of process and their joinder must not eliminate subject-matter jurisdiction. Fed. R. Civ. P. 19(a)(1). Additionally, the court must find that *either* (A) "in that person's absence, the court cannot accord complete relief among existing parties" or (B) the person "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." *Id.*

7

Rule 19(a)(1)(A) does not necessitate joinder. Ameda contends that Cimilre must be included to achieve complete relief because Cimilre is the rightful contract holder and a critical player in the underlying dispute. "[C]omplete relief," however, "refers only to relief between the persons already parties, and not as between a party and the absent person whose joinder is sought." *Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 484 (7th Cir. 2001) (quotation marks omitted). Cimilre's stake is therefore relevant to Rule 19(a)(1)(A) only to the extent that Ameda or Ksure could not be made whole in its absence. Ameda provides no persuasive reason why that might be so. If Ksure fails to assert a viable claim for unjust enrichment, dismissal with prejudice would constitute an unequivocal win for Ameda. Conversely, if Ksure ultimately prevails on that theory, an appropriate damages remedy would in no way be "partial or hollow." *Leigh v. Engle*, No. 78-cv-03799, 1986 WL 000892, at *2 (N.D. Ill. Jan. 8, 1986) (quoting Fed. R. Civ. P. 19(a)(1) advisory committee note). Because the defendant has not "identified anything this [C]ourt would need to order [Cimilre] to do, or refrain from doing, to provide complete relief between the existing parties," Rule 19(a)(1)(A) in no way compels the company's joinder. *Equal Emp. Opportunity Comm'n v. Sunnybrook Educ. Ass'n, IEA-NEA*, 712 F. Supp. 3d 1093, 1098 (N.D. Ill. 2024).[4]

The case for joinder under Rule 19(a)(1)(B) is even weaker. Under that Rule, "an absent party typically must claim an interest in the litigation before a court will determine that its interests would be impaired if not joined or that an existing party could be subject to inconsistent obligations." *Varlen Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 09-cv-7915, 2011 WL 3664796, at *5 (N.D. Ill. Aug. 17, 2011); *see also Su v. Su*, 672 F. Supp. 3d 573, 590 (N.D. Ill. 2023) (finding no absent party was required under Rule 19(a)(1)(B) because the party seeking joinder "provided no evidence that the absent persons have claimed an interest in this litigation"). Ameda has not provided any indication that Cimilre has expressed interest in participating in this litigation. Nor has Ameda offered any extenuating considerations for why Cimilre's lack of interest might be overlooked. *See Leaf Funding, Inc. v. PMI Sports, Inc.*, No. 07-cv-04571, 2008 WL 4717166, at *5 (N.D. Ill. May 29, 2008) ("When an outsider is aware of an action and does not claim an interest, courts typically do not second-guess the decision."). By all appearances, Cimilre has assiduously avoided involvement, seriously undercutting the case for its inclusion under Rule 19(a)(1)(B).

Because neither prong of Rule 19(a) justifies the forcible joinder of a nonparty, Ameda's motion to that effect is denied.

---

[4] Ameda maintains that the merits of Ksure's claim could turn on whether Ameda had a contractual right to withhold payments to offset legal fees. Joinder Mot. 6-7. Assuming that is true, the defendant does not explain why traditional methods of obtaining discovery from Cimilre as a third party would be ineffective to resolve the offsetting issue. Without prematurely deciding any discovery matter, at this juncture the Court anticipates no insuperable obstacle to Ameda obtaining any necessary and producible information from Cimilre through third-party subpoenas.

\* \* \*

The plain text of the Supply Agreement unmistakably communicates an intent to govern the submission and fulfillment of purchase orders between Ameda and Cimilre. Since those orders are supplements rather than standalone contracts, they are subject to any terms of the master Supply Agreement that they do not explicitly modify. That includes the Agreement's non-assignment clause, which categorically bars Ksure from alleging breach of contract on Cimilre's behalf as a third-party assignee. Because Ksure has identified no other basis for why the retention of the disputed pump shipments would be unjust, its theory of unjust enrichment likewise fails. The same goes for Ksure's fraud theory, which requires allegations of reliance, and intent to induce reliance, that are fundamentally inconsistent with the complaint.

The non-assignment provision is a double-edged sword, however: It also severs the foundation for Ameda's motion for arbitration. Because the arbitration provision of the Supply Agreement has no binding effect on Ksure as a third party, the Court denies Ameda's motion seeking its enforcement.

The motion to join Cimilre as a third party is likewise denied. Ameda has not demonstrated that Cimilre's inclusion in the lawsuit is necessary to permit complete relief to either side. Nor has Cimilre given any indication of a claimed interest in this action, a prerequisite to joinder under Rule 19(a)(1)(B).

In light of the foregoing, the defendant's motion to dismiss is granted, the motion to compel arbitration is denied, and the motion to compel joinder of a required party is denied. The plaintiff's complaint is dismissed without prejudice for failure to state a claim. By September 11, 2025, the plaintiff may file an amended complaint that conforms to this opinion. The amended complaint must omit any theories of fraud or breach of contract and plausibly allege the factual predicates of an independent claim for unjust enrichment. That requires alleging sufficient facts to support the conclusion that Ameda's retention of the disputed breast-pump shipments was unjust for reasons *unrelated and not in reference to* its failure to pay the full amount dictated by the associated purchase orders.

Date: August 21, 2025

John J. Tharp, Jr.
United States District Judge